IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| FAITH MALICK, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-14-1545 |
| | § | |
| NCO FINANCIAL SERVICES, INC., *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

Faith Malick and her son-in-law, Ronald Reed, sued NCO Financial Systems, Inc. and Does 1-10, alleging that they violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, by disclosing Malick's delinquent-debt information to her daughter (Reed's wife) and by misrepresenting the amount. On August 4, 2014, NCO gave plaintiffs a $3,000.00 offer of judgment, with each plaintiff to receive $1,500.00, plus the reasonable attorneys' fees and costs incurred to that date. The offer did not specify the fee amount. The fee cut-off provision precluded any recovery for fees incurred if the parties did not agree and had to litigate what was reasonable. The plaintiffs' counsel did not respond, and the offer expired.

On April 17, 2015, the parties settled. NCO paid each plaintiff $1,500.00, the same amount it had offered the previous August. The settlement did not address fees or costs. When the parties were unable to agree on the fee amount, the plaintiffs filed this motion seeking $22,763.75 in attorneys' fees and $414.30 in costs. NCO responded, arguing that the fee amount was unreasonable and should be reduced to $3,553.10.

Based on the motion and the response, the record, and the applicable law, this court grants

1

the plaintiffs' motion for attorneys' fees in part and awards $14,728.15 in reasonable fees and costs. By July 20, 2015, the parties must submit an agreed form of final judgment. The reasons for this ruling are explained below.

## I.     Background

When the parties settled on April 17, 2015, they filed a joint status report notifying the court of the settlement. (Docket Entry No. 22, at 1). The joint status report stated that the parties would attempt to agree on attorneys' fees and costs, but if they could not, the plaintiffs could ask the court for a fee award. (*Id.*). After unsuccessfully conferring with defense counsel, the plaintiffs filed this motion requesting $22,763.75 in fees.   The plaintiffs are represented by Louis and Brian Dell. Louis Dell has over 22 years of experience handling litigation under the FDCPA and other consumer statutes. (Docket Entry No. 24, at 11). He is a member of the National Association of Consumer Advocates, a plaintiff-oriented attorney association. (*Id.*). Brian Dell has 38 years of experience in handling state and federal-court litigation. (*Id.*). The motion sought $18,945.00 for Louis Dell's work on the case and $3,818.75 for Brian Dell's work, plus $414.30 in costs. (Docket Entry No. 23, at 1). NCO responded, arguing that the requested fees were unreasonable and should be reduced to $3,553.10. (Docket Entry No. 24, at 4). The plaintiff replied, and NCO surreplied. (Docket Entry Nos. 25, 28).

## II.    The Legal Standard For Determining Attorneys' Fees

"[I]n the case of any successful action to enforce" the FDCPA, a debt collector is liable for "the costs of the action, together with a reasonable attorneys' fee as determined by the court."  15 U.S.C. § 1692k(a)(3). The Fifth Circuit uses the lodestar analysis to determine reasonable attorneys' fees. *Turner v. Oxford Mgmt. Servs., Inc.*, 552 F. Supp. 2d 648, 650 (S.D. Tex. 2008) (citing

2

*Forbush v. J.C. Penney Co.*, 98 F.3d 817, 821 (5th Cir. 1996)). The lodestar amount is "the product of reasonable hours times a reasonable rate." *Pennsylvania v. Del. Valley Council for Clean Air*, 478 U.S. 546, 647 (1986). There is a "'strong presumption' that the lodestar represents the 'reasonable' fee." *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992); *see also Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 1672-73 (2010).

The lodestar amount may be adjusted up or down to ensure that the award is reasonable. *See La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 328 (5th Cir. 1995); *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993); *Shipes v. Trinity Indus.*, 987 F.2d 311, 320 (5th Cir. 1993). When deciding whether and to what extent to depart from the lodestar, the court considers the twelve *Johnson* factors. They include:

1. the time and labor required to represent the client(s);

2. the novelty and difficulty of the issues in the case;

3. the skill requisite to properly perform the legal services;

4. preclusion of other employment by the attorney due to acceptance of the case;

5. the customary fee charged for those services in the relevant community;

6. whether the fee is fixed or contingent;

7. the time limitations imposed by the client or circumstances;

8. the amount involved and the results obtained;

9. the experience, reputation, and ability of the attorney(s);

10. the undesirability of the case;

11. the nature and length of the professional relationship with the client; and

12. awards in similar cases.

*Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974). The most important factor is the "degree of success obtained." *Singer v. City of Waco*, 324 F.3d 813, 829 (5th Cir. 2003) (citing *Romaguera v. Gegenheimer*, 162 F.3d 893, 896 (5th Cir. 1998)).

### III.     The Lodestar Calculation

#### A.     A Reasonable Hourly Rate

The first step in computing the lodestar is determining a reasonable hourly rate. "'[R]easonable' hourly rates 'are to be calculated according to the prevailing market rates in the relevant community.'" *McClain v. Lufkin Indus.*, 649 F.3d 374, 381 (5th Cir. 2011) (quoting *Blum v. Stenson*, 465 U.S. 886, 104 (1984)). "The prevailing market rates for similar services by similarly trained and experienced lawyers in the relevant legal community is the established basis for determining a reasonable hourly rate." *Villegas v. Regions Bank*, H:11-cv-904, 2013 WL 76719, at *3 (S.D. Tex. Jan. 4, 2013) (citing *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002)). "When an attorney's customary billing rate is the rate at which the attorney requests the lodestar be computed and that rate is within the range of prevailing market rates, the court should consider this rate when fixing the hourly rate to be allowed. When that rate is not contested, it is prima facie reasonable." *Kellstrom*, 50 F.3d, at 328. "Determination of the reasonable hourly rate for a particular community is generally established through affidavits of other attorneys practicing there." *Chisholm v. Hood*, 90 Fed. App'x. 709, 710 (5th Cir. 2004); *see also Watkins v. Input/Output, Inc.*, 531 F. Supp. 2d 777, 784 (S.D. Tex. 2007) ("The evidence to support a hourly rate entails more than an affidavit of the attorney performing the work but must also address the rates actually billed and paid in similar lawsuits.").

Louis Dell charged $450.00 per hour and Brian Dell charged $325.00 per hour. (Docket

Entry No. 23, at 10). NCO argues that a reasonable hourly rate of $280.00 should apply to Louis Dell and that an hourly rate of $290.00 should apply to Brian Dell. (Docket Entry No. 24, at 8). The court finds that the hourly rates the plaintiffs' attorneys submitted are unreasonably high and accordingly reduces Louis Dell's hourly rate to $300.00 and Brian Dell's to $295.00.

Attorneys in FDCPA cases within the Southern District of Texas, Houston Division, are generally awarded fees using a $300.00 hourly rate. *Serna v. Law Office of Joseph Onwuteaka, PC*, No. 4:11-CV-3034, 2014 WL 3749652, at *5 (S.D. Tex. July 29, 2014), *aff'd sub nom. Serna v. Law Office of Joseph Onwuteaka, P.C.*, No. 14-20574, 2015 WL 3526977 (5th Cir. June 5, 2015) (holding that a $300.00 hourly rate was reasonable for a litigator with 21 years of experience); *Memon v. Pinnacle Credit Servs., LLC*, No. 4:07-CV-3533, 2009 WL 6825243, at *4 (S.D. Tex. May 21, 2009) (using a $300.00 hourly rate for a litigator with 18 years of experience); *Turner*, 552 F. Supp. 2d at 653 (applying a $300.00 hourly rate). Survey data specific to the Houston legal market corroborates the reasonableness of the $300.00 hourly rate for lawyers with Louis and Brian Dell's experience and in their practice area. (Docket Entry No. 24-1, Ex. 4) (State Bar of Texas Department of Research and Analysis 2013 Hourly Fact Sheet, available at: https://www.texasbar.com/AM/Template.cfm?Section=Demographic_and_Economic_Trends&Template=/CM/ContentDisplay.cfm&ContentID=27264).

To support their argument that the submitted fees are within the prevalent market rates for FDCPA and other consumer cases in Houston, Texas, the plaintiffs submitted the Small Law Firm Economic Survey,[1] and a Corporate Counsel publication listing partner rates for Fulbright &

---

[1] (Docket Entry No. 23-6) (stating that in the southern region of the U.S., partners in the highest decile of compensation have hourly rates of $450.00).

Jaworski's Houston office.² Both are inapposite. Neither addresses the customary hourly rates for consumer-law attorneys in the Houston area. The survey provides regional data, not data for Houston, and the Fulbright & Jaworski publication provides the fees charged by lawyers in that firm's Houston office for its practice areas. The publication does not refer to cases brought under the FDCPA or other consumer statutes, and it is unclear that the firm's practice includes cases similar to this one. (Docket Entry No. 23-7).

The plaintiffs also submitted an affidavit from Dana Karni, a licensed attorney in the Houston area who practices consumer law. Ms. Karni's affidavit states that the $450.00 hourly rate for a Houston-area consumer-law attorney is reasonable. (Docket Entry No. 25, Declaration of Dana Karni). Other statements in the affidavit, however, undermine this conclusion. Ms. Karni states that she was recently awarded fees of $350.00 per hour, $100.00 less than Louis Dell's requested amount. She also states that she has obtained $400.00 per hour fees from clients in consumer cases, which is also below the fee Louis Dell seeks from this court, and which do not involve fees reviewed and approved by a judge.

Ms. Karni's affidavit states that the Laffey Matrix, a rate schedule produced by the Department of Justice for attorneys in the Washington-Baltimore area, supports Louis Dell's request. (*Id.*). The Fifth Circuit does not appear to have used the Laffey Matrix to determine reasonable rates because the Laffey Matrix doe not account for the prevailing rates in the community. *In re Enron Corp. Securities, Derivative & ERISA Litig.*, 586 F. Supp. 2d 732, 819 (S.D. Tex. 2008) ("[T]he Laffey Matrix is also contrary to federal case law in lodestar cases, which requires the district court

---

² (Docket Entry No. 23-7) (stating that for partners at Fulbright & Jaworski's Houston office, hourly rates range from $320.00 to $590.00).

to award to the petitioning attorney fees in accordance with the prevailing rate that other attorneys of comparable skill, experience and reputation would charge for similar work in the relevant market place."). The court, like many other federal courts that have calculated lodestar amounts outside of the Washington, D.C. area, declines to use the Laffey Matrix to determine reasonable hourly rates.[3]

The record does not support the significant variance above the $300.00 hourly rate that Louis and Brian Dell seek. Based on the record and the applicable law, the court finds that a reasonable hourly rate for Louis Dell is $300.00 per hour and for Brian Dell is $295.00 per hour.

### B.     A Reasonable Number of Hours

The second step in the lodestar analysis is to determine the number of hours reasonably spent on the litigation. A court must exclude excessive, redundant, or otherwise unnecessary hours. A court may deduct a reasonable percentage of the hours claimed as a practical means of trimming fat from a fee application. Fee applicants have the burden of showing that the hours billed are reasonable. *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 799 (5th Cir. 2006) ("[P]laintiffs seeking attorney's fees are charged with the burden of showing the reasonableness of the hours billed and, therefore, are also charged with proving that they exercised billing judgment.").

The plaintiffs submit evidence showing that Louis Dell spent 42.1 hours on the case and Brian Dell spent 11.75 hours, including the time spent seeking fees and responding to NCO's

---

[3] *See, e.g.*, *Bratton v. Thomas L. Firm, PC*, 943 F. Supp. 2d 897, 904 (N.D. Ind. 2013) (holding in a FDCPA case that "the Laffey Matrix, which is focused on billing rates in Washington, DC, . . . fail[s] to adequately describe prevailing rates in the Northern District of Indiana."); *Perez v. Cozen & O'Connor Grp. Long Term Disability Coverage*, No. 05CV0440DMSAJB, 2007 WL 2142292, at *2 (S.D. Cal. Mar. 27, 2007) (using the Laffey Matrix "would be contrary to Ninth Circuit law," which requires "district courts to use 'the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation.'" (emphasis removed) (citation omitted)); *Am. Canoe Ass'n, Inc. v. U.S. EPA*, 138 F. Supp. 2d 722, 741 (E.D. Va. 2001) (declining to use the Laffey Matrix to calculate the reasonable market rate for Alexandria, Virginia, despite Alexandria's proximity to Washington, D.C.).

opposition brief. (Docket Entry No. 23, at 10); (Docket Entry No. 25, at 5). The defendants' counsel argues that Louis Dell should be awarded fees for only 9.30 of the 42.1 hours and that Brian Dell should be awarded fees for only 4.55 of the 11.75 hours they seek. (Docket Entry No. 24, Ex. 6). The reasonableness of the hours sought is examined below.

### 1.     Duplicative Billings

NCO argues that the time billed for Louis Dell on October 9, 2014 and for Brian Dell on February 6 and 20 includes time for duplicative and therefore unnecessary work. (Docket Entry No. 24, at 10). These billing entries are facially duplicative. Brian Dell's February 6 and February 20, 2014 entries are both for time spent on "receipt & review of materials from NCO." (Docket Entry No. 23-5). Louis Dell's October 9, 2014 entries are also identical. (Docket Entry No. 23-4). The plaintiffs argues in their response that the duplicative entries show that the lawyers completed the work described in two time blocks and that the entries were duplicative only because of a typographical error (a client's name should have been changed). (Docket Entry No. 25, at 2). Because the plaintiff has the burden of showing the reasonableness of the submitted hours, the court may not draw these inferences without corroborating evidence. *See Abrams v. Baylor Coll. of Med.*, 805 F.2d 528, 536 (5th Cir. 1986). There is no evidence in the record supporting the assertion that two separate time blocks were devoted to completing a single task or that the duplicative entries are the result of a typographical error. *See Grappe v. Kansas City So. Ry. Co.*, 71 F. App'x 302, 304 (5th Cir. 2002) (affirming the district court's fee reduction because "trial counsel's affidavits . . . fail[ed] to mention whether entries relating to the unsuccessful Title VII claims were eliminated from the billing request"); *see also Latin Am. Music Co., Inc. v. Archdiocese of San Juan of the Roman Catholic Church and Apostolic Church*, 488 F. Supp. 2d 33, 39-40 (D.P.R. 2007) (reducing

the fee award because some of the billing entries were "entered twice"). The record shows that the entries are duplicative. Fees are awarded for only one of the duplicated entries, 2.0 hours for Louis Dell's October 9, 2014 entry and 0.33 hours for or Brian Dell's February 6, 2014 entry. Louis Dell's hours are therefore reduced by 2.0 and Brian Dell's by 0.33.

### 2. Noncompensable Billings

Attorneys may not charge their standard hourly rates for clerical or nonlegal tasks. *See Abrams v. Baylor Coll. of Med.*, 805 F.2d 528, 535 (5th Cir. 1986) ("It is appropriate to distinguish between legal work, in the strict sense, and investigation, clerical work, compilation of facts and statistics and other work which can often be accomplished by non-lawyers but which a lawyer may do because he has no other help available. Such nonlegal work may command a lesser rate. Its dollar value is not enhanced just because a lawyer does it.").[4]

Courts generally state that "[c]lerical work is not recoverable in an award of attorneys' fees." *Black v. SettlePou, P.C.*, No. 3:10-CV-1418-K, 2014 WL 3534991, at *6 (N.D. Tex. July 17, 2014) (citing *Vela v. City of Hous.*, 276 F.3d 659, 681 (5th Cir. 2001)); *see also Lewallen v. City of*

---

[4] There is no precise test for determining whether a task is legal or clerical. Courts frequently generate nonexhaustive lists of tasks that qualify as clerical. *Compare Missouri v. Jenkins by Agyei,* 491 U.S. 274, 288 (1989) (approving a fee for work on legal tasks that were not as sophisticated as many but nonetheless legal in nature, including "factual investigation, . . . assistance with depositions, interrogatories, and document production; compilation of statistical and financial data; checking legal citations; and drafting correspondence" is appropriate), *with Walker v. U.S. Dep't of Hous. & Urban Dev.*, 99 F.3d 761, 771 (5th Cir. 1996) (holding that "responding to requests . . . for information, . . . gathering information, . . . interviewing class members, investigating complaints, and developing a coherent picture" were clerical tasks); *see also Black v. SettlePou, P.C.*, No. 3:10-CV-1418-K, 2014 WL 3534991, at *6 (N.D. Tex. July 17, 2014) ("[H]ours spent drafting cover letters to the court, calendaring deadlines, filing appearance forms, ordering transcripts, reorganizing case materials, and filing notices of address change are not compensable because they are clerical in nature."); *Fralick v. Plumbers & Pipefitters Nat. Pension Fund*, No. 3:09-CV-0752-D, 2011 WL 487754, at *8 (N.D. Tex. Feb. 11, 2011) (holding that "preparing exhibits, serving and filing proofs of service, organizing files, faxing drafts, telephone conferences with an assistant, organizing research, telephone conferences with chambers regarding status, and emailing comments to co-counsel about the court's opinion" was clerical work).

*Beaumont*, No. CIV.A. 1:05-CV-733TH, 2009 WL 2175637, at *7 (E.D. Tex. July 20, 2009), *aff'd*, 394 F. App'x 38 (5th Cir. 2010) (subtracting the hours two attorneys spent doing clerical tasks from the total number of hours submitted). In *Vela*, 276 F.3d, at 681, the Fifth Circuit refused to award fees for paralegals doing clerical work. *Id.* ("Paralegal work can only be recovered as attorneys' fees if the work is legal rather than clerical." (citing *Allen v. U.S. Steel Corp.*, 665 F.2d 689, 697 (5th Cir. 1982))). The Fifth Circuit has held that the value of non-legal work "is not enhanced just because a lawyer does it." *Johnson*, 488 F.2d at 717, *abrogated in part by Blanchard v. Bergeron*, 489 U.S. 87, 109 (1989) (overruling the Fifth Circuit's ceiling approach to contingency fees but not overruling the holding stated above). Like paralegal time spent on nonlegal work, attorney time on nonlegal work cannot be recovered as attorneys' fees. *See Black*, 2014 WL 3534991, at *6 (holding that clerical tasks attorneys performed were not compensable); *see also Lewallen*, 2009 WL 2175637, at *7 (subtracting several hourly entries by attorneys because the tasks performed in those entries were clerical).

NCO argues that ten of Louis Dell's entries and eight of Brian Dell's entries either partially or exclusively involved "administrative" tasks or "interoffice conferences" and requests a reduction of Louis Dell's hours by 2.6 and Brian Dell's by 3.37. (Docket Entry No. 24-1, Ex. 6). Several entries are for exclusively clerical work. For example, Brian Dell's entry on June 10, 2014 reads: "Activity: Send court ruled scheduling order, etc. to NCO; talk to case mgr at TXS about notices." Several entries are for work that is partially legal and partially clerical. For example, Brian Dell's entry on June 3, 2014 reads: "Preparation of pleadings; Prepare summons, EOA, civil coversheet; call USDC-WDTX for info regarding their ECF system; file initiating documents, creating case no.; forward filed docs to co-counsel and clients." The plaintiffs did not identify the time the lawyers

10

spent on the clerical work included in the billing entries.  Based on the work described and the amount of time spent, the court finds that Louis Dell spent 1.4 hours on clerical tasks and Brian Dell spent 0.85 on clerical tasks.  Louis Dell's hours are reduced by 1.4 and Brian Dell's by 0.85.

### C. The Lodestar Amount

Based on the above analysis, the court reduces Louis Dell's hours by 3.4 hours, for a total of 38.7 hours, and Brian Dell's hours by 1.18 hours, for a total of 10.57 hours.  Multiplying Louis Dell's reasonable hours by his reasonable hourly rate results in a lodestar amount of $11,610.00 (38.7 x $300 = $11,610).  The same calculation for Brian Dell results in a lodestar amount of $3,118.15 (10.57 x $295 = $3,118.15).  The total lodestar amount for attorneys' fees is $14,728.15.

### IV. Adjusting the Lodestar Amount Based on the *Johnson* Factors

Of the twelve *Johnson* factors that may merit adjustment in the lodestar amount, the most important factor is the "degree of success obtained."  *Singer*, 324 F.3d, at 829 (citing *Romaguera*, 162 F.3d, at 896).  If the success is limited, the lodestar amount should be reduced.  *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) (holding that when "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount.").  But the fee award should not be simply proportionate to the result obtained.  *Andrews v. United States*, 122 F.3d 1367, 1376 (11th Cir. 1997).  In many consumer cases, which limit recoveries to a relatively small damages amount, the fees awarded are seemingly disproportionate.  This does not "render the award of attorneys' fees excessive." *Northwinds Abatement v. Employers Ins.*, 258 F.3d 345, 355 (5th Cir. 2001).

NCO argues that the lodestar amount should be reduced because the plaintiffs unreasonably prolonged the litigation by not accepting the August 4 offer of judgment.  (Docket Entry No. 24, at

13). NCO urges the court to deny attorneys' fees accrued after the offer of judgment lapsed on August 21. (Docket Entry No. 24, at 13). NCO relies on *Moriarty v. Svec*, 233 F.3d 955, 967 (7th Cir. 2000), in which the court held that "[a]ttorneys' fees accumulated after a party rejects a substantial offer provide minimal benefit to the prevailing party, and thus a reasonable attorneys' fee may be less than the lodestar calculation." *Moriarty*, 233 F.3d, at 967. The court explained that "an offer is substantial if . . . the offered amount appears to be roughly equal to or more than the total damages recovered by the prevailing party. In such circumstances, a district court should reflect on whether to award only a percentage (including zero percent) of the attorneys' fees that were incurred after the date of the settlement offer." *Id.* (citations omitted)). At the same time, the Seventh Circuit "stress[ed]" that a district court is not required to make a downward adjustment to the lodestar based on a rejected settlement offer. *Id.*[5]

While the Fifth Circuit has not adopted the *Moriarty* rule, other circuits have. *See Ingram v. Oroudjian,* 647 F.3d 925, 927 (9th Cir. 2011); *Lohman v. Duryea Borough*, 574 F.3d 163, 167 (3d Cir. 2009); *Parke v. First Reliance Standard Life Ins. Co.*, 368 F.3d 999, 1012 (8th Cir. 2004); *Dalal v. Alliant Techsystems, Inc.*, 182 F.3d 757 (10th Cir. 1999). Recovery of more than the offered amount does not automatically make the plaintiffs' choice to continue litigating reasonable. *See Anderson v. Unum Life Ins. Co. of Am.*, No. CIVA 2:01CV894-ID, 2007 WL 604728, at *14 (M.D.

---

[5] Under Rule 68, "a plaintiff who rejects a Rule 68 offer (offer of judgment) and recovers less by prosecuting the case is not entitled to collect any post-offer attorney's fees if the relevant fee statute treats attorney's fees as part of 'costs.'" *Marek v. Chesny*, 473 U.S. 1, 8-9 (1985); Fed. R. Civ. P. 68(d). Rule 68's limits do not apply here for two reasons. First, the plaintiffs' recovery was more favorable than the unaccepted offer because it included fees incurred in seeking fees. Second, Rule 68 does not necessarily apply when the legislation separately defines costs and attorney's fees, as the FDCPA does. *See Marek*, 473 U.S. at 8-9; 15 U.S.C. § 1692k(a)(3). Instead, "[t]he court has broad discretion in deciding whether to award post-offer attorney's fees where the plaintiff obtains a judgment for less than the amount of the Rule 68 offer." *Costa v. Nat'l Action Fin. Servs.*, No. CIV S-05-2084 FCDKJM, 2008 WL 1925235, at *2 (E.D. Cal. Apr. 30, 2008) (citing *Haworth*, 56 F.3d at 1052).

12

Ala. Feb. 22, 2007) (finding that the plaintiff's rejection of an $5,810.82 offer that also provided full attorney's fees and costs when she recovered a total of $6,099.97 was unreasonable).

In this case, the time expended after NCO's offer of judgment expired was reasonable. NCO's initial offer contained a fee-cutoff provision that was removed in the final settlement. *Compare* (Docket Entry No. 24-1, Ex. 1),[6] *with* (Docket Entry No. 24-1, Ex. 3);[7] *see also Fulford v. NCO Fin. Sys., Inc.*, No. 607-CV-1196ORL-22KRS, 2008 WL 2952859, at *1 (M.D. Fla. July 30, 2008) (finding that nearly identical language to NCO's original offer did not permit the recovery of fees on fees).[8] It was reasonable for the plaintiffs in this case to decline an offer that included a fee-cutoff provision because acceptance would leave them "without the ability to apply to the Court for the fees incurred in the process of moving for attorney fees, that is, so-called 'fees-on-fees.'" *See Younger v. Michael & Associates, P.C.*, No. 13-CV-1679 YGR, 2014 WL 1760827, at *3 (N.D. Cal. Apr. 30, 2014). An FDCPA plaintiff may recover fees for time spent litigating attorneys' fees. *Scott v. Fed. Bond & Collection Serv., Inc.*, No. 10-CV-02825-LHK, 2011 WL 176846, at *3 (N.D. Cal. Jan. 19, 2011) (citing *Camacho v. Bridgeport Financial, Inc.*, 523 F.3d 973, 981-82 (9th Cir.

---

[6] "[T]he Judgment entered shall also include an amount for reasonable attorney's fees and costs <u>accrued through the date of this Offer of Judgment</u> with respect to the claims against Defendant. Reasonable attorney's fees and costs are to be agreed upon by the parties, or, if the parties are unable to agree, to be determined by the Court on application by Plaintiff <u>subject to the limitation that fees and costs are cut off as of the date of this Offer of Judgment</u>." (Docket Entry No. 24-1, Ex. 1) (emphasis added)

[7] "In consideration of an in exchange for the contemporaneous release set for in ¶ 1 above and dismissal of the Lawsuit with prejudice, NCO shall pay Claimants a total of $3,000 plus Claimants' <u>reasonable attorney's fees and costs incurred in prosecuting this Lawsuit</u>." (Docket Entry No. 24-1, Ex. 3) (emphasis added).

[8] "The Judgment entered shall also include an amount for reasonable costs and attorney's fees accrued through the date of this Offer of Judgment. Reasonable costs and attorney's fees are to be agreed upon by the parties, or, if the parties are unable to agree, to be determined by the Court on application by plaintiff's counsel subject to the limitation that attorney's fees and costs are cut off as of the date of this Offer of Judgment[.]" *See Fulford*, 2008 WL 2952859, at *1.

2008)).[9] In *Camacho*, the Ninth Circuit noted that "[i]n statutory fee cases, federal courts, including our own, have uniformly held that time spent in establishing the entitlement to and amount of the fee is compensable." *Camacho*, 523 F.3d at 981 (holding that "fees on fees" are justified "because it would be inconsistent to dilute a fees award by refusing to compensate attorneys for the time they reasonably spent in establishing their rightful claim to the fee.") (quoting *In re Nucorp Energy, Inc.*, 764 F.2d 655, 659–660 (9th Cir. 1985)).

In *Younger*, the defendant sought a reduction in FDCPA attorney's fees for work performed after an offer containing a fee-cutoff provision was rejected. *Younger*, 2014 WL 1760827, at *3. The court refused to cut the plaintiffs fees, holding that:

> Nothing in the law required plaintiff to accept that diminution of his rights, nor did any circumstance apparent in this case make it unreasonable for him to do so. The tasks undertaken by plaintiff's counsel following rejection of the first Rule 68 offer were normal activities of litigation: reviewing notices from the Court, communicating with his client, drafting joint statements with opposing counsel, making initial disclosures and propounding a first set of written interrogatories, reviewing defendants' initial disclosures and responses to discovery, and preparing for mediation.

*Id.*

The court finds that the plaintiffs' rejection of NCO's initial offer of judgment was

---

[9] Many courts have held that offers of judgment that cut off recovery for preparing attorneys' fees petitions in FDCPA cases do not offer complete relief. *Lobianco v. John F. Hayter, Attorney at Law, P.A.*, 944 F. Supp. 2d 1183, 1186 (N.D. Fla. 2013) ("The Defendants' offer of judgment did not provide complete relief to Plaintiff because it only offered to pay costs and attorney's fees as of the date of the offer, thereby excluding post-offer fees incurred in establishing the amount of compensable attorney fees."); *Hernandez v. Asset Acceptance, LLC*, 279 F.R.D. 594, 597 (D. Colo. 2012) (holding that "complete relief under the FDCPA includes attorney's fees expended after the receipt of a Rule 68 offer."); *Andrews v. Professional Bureau of Collections of Maryland, Inc.*, 270 F.R.D. 205, 208 (M.D. Pa. 2010) (holding that the plaintiff's FDCPA claim was not moot because "by cutting off the date upon which attorney's fees may accrue, Defendant's offer of judgment did not provide for full relief under the FDCPA"); *Pollock v. Bay Area Credit Service, LLC*, No. 08–61101–Civ., 2009 WL 2475167, at *6 (S.D. Fla. Aug. 13, 2009) (denying motion to dismiss claims under FDCPA and Florida statute on mootness grounds where Rule 68 offer provided $2,001, but cut off fees and costs at the date of the offer).

reasonable. The fee-cutoff provision would prevent the plaintiffs from recovering the fees they incurred if the parties could not agree on the amount of "reasonable fees" and the plaintiffs had to seek a fee award in court. After rejecting the initial offer of judgment, the plaintiffs undertook normal activities, ranging from discovery review, communicating with clients and defendants' counsel, and preparing for depositions and mediation, before the case settled. The court declines to eliminate or reduce attorneys' fees incurred after the plaintiffs rejected the initial offer of judgment.

**V.     Costs**

The plaintiffs seek $414.30 in costs. (Docket Entry No. 23, at 1). Under the FDCPA, a debt collector is liable to a successful plaintiff for "the costs of the action, together with a reasonable attorneys' fee as determined by the court." 15 U.S.C. § 1692k(a)(3). The defendants do not object. (Docket Entry No. 24-1, Ex. 6). The defendants are liable for the $414.30 in costs. *See* 28 U.S.C. § 1920.

**VI.    Conclusion**

The court orders the defendants to pay the plaintiffs $14,728.15 in fees and $414.30 in costs. By July 20, 2015, the parties must submit an agreed form of final judgment. Payment is due no later than August 7, 2015.

SIGNED on July 6, 2015, at Houston, Texas.

                                                Lee H. Rosenthal
                                               United States District Judge